PETERS v. MARTIN ET AL.

[No. 9,740. Filed February 21, 1919.]

1. BROKERS.—*Real Estate Brokers.—Compensation.—Oral Contract.—Statute.*—Under §7463 Burns 1914, Acts 1913 p. 638, requiring contracts for the payment of commissions for the sale

of real estate to be in writing, a contract to pay a broker commission for procuring a purchaser for land, to be enforceable, must be wholly in writing, a contract partly in writing and partly in parol being insufficient.  p. 442.

2.  BROKERS.—*Real Estate Brokers.—Compensation.—Contract.—Validity.—Statute.*—Where a real estate broker, in answer to a landowner's letter asking if he would accept a specified amount for his services in procuring a purchaser for land, replied that he would not accept such amount, and stated that the usual commission for the sale of farm lands, which was much larger than the amount named, would be right, and further correspondence failed to again refer to the broker's compensation, the minds of the parties did not meet, and the letters did not embody a contract enforceable under §7463 Burns 1914, Acts 1913 p. 638, requiring contracts for the payment of commissions for the sale of real estate to be in writing.  p. 442.

3.  BROKERS.—*Real Estate Brokers.—Compensation.—Contract.—Validity.—Statute.*—Where a real estate broker and a landowner failed to agree in writing as to the amount of commission to be paid for procuring a purchaser, as required by §7463 Burns 1914, Acts 1913 p. 638, the owner's contract with a third party procured by the broker, stating that the owner was to pay a "commission of not to exceed $500" to the broker, did not fix the amount of commission with sufficient certainty to comply with the statute.  p. 443.

From Starke Circuit Court; *W. C. Pentecost,* Judge.

Action by Robert D. Peters against Michael E. Martin and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Orville W. Nichols* and *Oscar B. Smith,* for appellant.

*Charles S. Luindin,* for appellees.

McMAHAN, J.—The appellant filed his amended complaint in four paragraphs to recover a commission for procuring a purchaser for a farm owned by the appellee Michael E. Martin, in Starke county, Indiana, and to set aside as fraudulent a conveyance

of said farm by appellee Michael E. Martin and his wife to the appellee Anna Martin. A demurrer for want of facts was sustained to each paragraph of this complaint, to which ruling appellant excepted and, refusing to plead further, judgment was rendered that he take nothing.

The assignment of error challenges the action of the court in sustaining the demurrer to each paragraph of the amended complaint.

It is alleged in each paragraph of complaint that the parties had been negotiating with each other concerning a sale of said farm, and that on June 5, 1915, appellant wrote a letter to the appellee Michael E. Martin, of which the following is a copy:

"Dear Sir:

"Look at number 6715 Winchester Avenue, Chicago, and make us an offer, this property while it is old is a good location, rents for $29 per month, and is free and clear, owner wants to trade for a farm and will pay difference in cash, now look at it, and make us your very best offer for cash difference. Mr. Martin, this man knows values of farm lands here, and he will be liberal in a trade, he will act quickly, so make him a good fair offer and state in your letter just what personal property goes with that offer giving a list of all stocks and machinery, also state what commission you will pay me for putting the deal over.

"Robert D. Peters."

On June 7, 1915, Michael E. Martin, in reply, wrote the following letter to appellant:

"Yours of June 5th, received this morning * * * Price is $7,000 and not a cent less,

\* \* \* I will not be able to look at the Root Street and Winchester Avenue Properties before next Friday or Saturday. Will see what the value is and will see in the Recorder's office how they stand.

"M. E. Martin."

To which was added an unsigned postscript, reading as follows:

"P. S. By a good and successful deal, I am willing to pay your commission but would be pleased to know the amount you expect."

At the same time, and in connection with this letter, there was inclosed a detailed description of the farm and the personal property that went with the farm.

The first paragraph of the amended complaint alleged that appellant referred the appellee Michael E. Martin to a real estate broker in Chicago, Illinois, by the name of Tobey, who had several properties of one Estelle M. King for sale or trade, and that appellee entered into negotiations with said Tobey and King looking toward an exchange of properties, and that on June 15, 1915, said appellee wrote the following letter to appellant:

"Referring to our correspondence, I think I can make a deal with Mr. Tobey, but the whole thing depends on you in regard to your commission, which I think I will have to pay, so kindly advise me if you will accept $50.00 for your services.

"If you accept, O. K., if not, please let me know in which case I will not be able to make the deal, inasmuch as the $18,000.00 tickles me very much.

"M. E. Martin."

On June 19, 1915, appellant, in answer to said letter of June 15, wrote a letter to appellee Michael E. Martin, of which the following is a copy:

"Replying to yours of the 15th will say, we find in your letter of the 7th, that you value your property at $7,000 being in the real estate business yourself, you certainly know that the commission for farm lands is 5% which in this case would be $350.00. While we might make a small concession to you as you are a dealer yourself, we would not under any circumstances accept $50.00 as a full payment, that would not pay us for our advertising expenses.

"We think about $325.00 would be right.
"Robert D. Peters."

August 4, 1915, appellee Michael E. Martin wrote the following letter to appellant:

"I made contract with Dr. King it was right— but they did not live up to our agreement and I don't think I change my mind but will stick to it accordingly.

"I have been down town today and just came home about 4 P. M. when I rec'd your letter. * * * Will let you know result and when I am coming to Knox next week to talk matters over more distinctly.

"M. E. Martin."

The complaint further alleges that the appellee Michael E. Martin and Mrs. King did enter into a contract for the exchange of said farm for certain properties of Mrs. King, which was made possible and was brought about through the efforts of appel-

lant, and that his commission was due and payable and wholly unpaid. Then follow the allegations relative to the conveyance of the farm by said appellee and his wife to the appellee Anna Martin, for the alleged purpose of avoiding the payment of the commission, with prayer for a judgment of $350, and that the said conveyance be set aside.

The second paragraph of complaint is the same as the first, except it alleges that a contract was entered into between Mrs. King and appellee for the exchange of their properties containing the following clause:

> "It is further mutually agreed that brokerage fees or commissions shall be paid to Albert J. Tobey by party of the first part and to R. D. Peters by party of the second part, this commission not to exceed $500,"—

and alleging that a reasonable fee for appellant's services and the fee usually charged for like services is five per cent. of the value of the property sold, and demanding judgment for $350.

The third paragraph is the same as the second, except it alleges that, when the said letter dated June 15 was written, the "deal" or contract between appellee Michael E. Martin and Mrs. King had been closed and finished and that said appellee had in said contract agreed to pay appellant a commission of "not to exceed $500," and demanding judgment for $350.

The fourth paragraph is the same as the first as to facts alleged, but it declares a reasonable fee for appellant's services is $350 and demands judgment.

The question involved in this appeal is whether any or all of the paragraphs of complaint state facts suf-

ficient to show a written contract to satisfy the terms of §7463 Burns 1914, Acts 1913 p. 638, which reads as follows: "That no contract for the payment of any sum of money, or thing of value, as and for a commission or reward for the finding or procuring, by one person, of a purchaser for the real estate of another shall be valid, unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: *Provided,* That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof."

As a general proposition, it can be stated that a contract under this section must be wholly in writing so as to be enforceable; that a contract partly in writing and partly in parol is a parol contract, and does not satisfy a statute which calls for a written contract as here under consideration. *Luther* v. *Bash* (1916), 61 Ind. App. 535, 112 N. E. 110.

In the case of *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114, Ann. Cas. 1913C 724-N, 33 L. R. A. (N. S.) 973, the Supreme Court said: "Where the law makes an express oral contract for services invalid, it will not create, by implication, a liability for services."

As we read the correspondence set out in the complaint, the minds of the parties did not meet on the amount of compensation appellant was to receive. Appellant's letter of June 5, 1915, asks what compensation appellee Michael E. Martin would "pay for putting the deal over." Appellee answered this letter June 7, asking to know the

amount of compensation expected, and, on June 15, he again wrote appellant to the effect that he thought he could make a deal, but that it depended on the amount of the commission, and asking if appellant would accept $50 for his services. Appellant then wrote the letter dated June 19, refusing to accept $50, and saying that said appellee knew that the usual commission for the sale of farm lands was five per cent., which in this case amounted to $350, and, on account of said appellee being a real estate dealer, offering to make a concession. He ended the letter as follows: "We think about $325 would be right." This ended the correspondence, except the letter of August 4, 1915, in which nothing is said about compensation. What compensation did appellee agree to pay? He did not agree to pay $350, as demanded in each paragraph of the complaint. Neither did he agree to pay "about $325," which appellant thought would be right.

It is insisted that the amount of the commission is fixed in the contract between Mr. Martin and Mrs. King, set out in the second and third paragraphs of the complaint, where it was stated that Mr. Martin was to pay a "commission of not to exceed $500" to appellant. We cannot concur in this contention. The amount to be paid is not definite and certain, as required by the statute. Quoting from *Zimmerman* v. *Zehender* (1904), 164 Ind. 466, 73 N. E. 920, where the Supreme Court said: "In short, the contract, in so far as it relates to this action, is only partially in writing. The important feature—the amount of commission to be paid—is to be ascertained by parol testimony in regard to an understanding which may prove to be a misunder-

standing, the exact thing which the statute was designed to prevent. A contract partly written and partly verbal is a parol contract, and contracts required by law to be in writing must be wholly written to be enforceable." Under this statute, *no* recovery can be had on the "*quantum meruit*."

The contract in this case not being a written one, as required by said §7463, there was no error in sustaining the demurrer to each paragraph of complaint.

Judgment affirmed.